26 C.C.P.A.(Patents)

## In re JONES.
### Patent Appeal No. 4140.

Court of Customs and Patent Appeals.
May 1, 1939.

John E. Jackson, of Pittsburgh, Pa. (Charles B. Spencer, of Pittsburgh, Pa., and Edward W. Shepard, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 1 to 5, inclusive, 7 to 11, inclusive, 13, 15, 16, 17, and 20 in appellant's application for a patent for an alleged invention relating to improvements in cordage, more particularly to cordage adapted for use as centers in wire ropes, and a method of making the same.

At the time of the oral arguments in this court, counsel for appellant moved to dismiss the appeal as to all of the appealed claims except claims 4, 8, and 13.

The motion is granted.

The claims remaining for our consideration, Nos. 4, 8, and 13, read:

"4. A hemp center for wire ropes and the like comprising a rope composed of fibers, yarns and strands, the angles of lay of said rope and strands both approximating 29.6°."

"8. A hemp center for wire ropes and the like comprising a rope composed of hard fibers, yarns and strands, the number of yarns in each strand being equal to twenty times the diameter of said rope expressed in inches or fractions thereof."

"13. A hemp center for wire ropes and the like comprising a rope composed of soft fibers, yarns and strands, the number of yarns in each strand being approximately equal to thirty-two times the diameter of said rope expressed in inches."

The references are:

Metcalf, 809,386, January 9, 1906.

"The Spinning and Twisting of Long Vegetable Fibres," by Herbert R. Carter, published by Charles Griffin and Company, Limited, Exeter Street, Strand, London, 1904. Pages 133 and 134.

The patent to Metcalf relates to improvements in fiber ropes. The patentee discloses a rope composed of three or more strands twisted together. The strands are composed of "an indefinite number of yarns twisted together."

The excerpt from the article by Carter was cited by the Primary Examiner for the purpose of showing "an example of what is common textile knowledge, that is, that the operator knows how to set his

machine to give a predetermined twist and to produce a given size of yarn, and he knows how much fibre to supply."

The pertinent part of the excerpt reads: " * * * For very coarse yarn, such as rope yarn, for instance, the degree of twist is indicated in turns per foot run, while for finer yarns the number of turns per inch is spoken of.

"For rope yarns the number of turns per foot twist required equals the product of 3.75 and the square root of the number of the yarn. For 25'm spun yarn, for instance, the correct twist will be $\sqrt{25} \times 3.75 = 5 \times 3.75 = 18.75$ turns. ·

"*Basis of Rope Yarn Numbering.*—The number of rope yarn indicates the number of threads of that yarn which will be required to make one of the three strands which will form a rope 3 inches in circumference. No. 40, for instance, indicates that three strands of 40 threads each, or 120 threads in all, make a rope 3 inches in circumference. The weight of 100 yards of No. 40 rope yarn may be calculated as follows:—The weight of 100 yards 3 inch circumference white rope averages about 84 lbs. The contraction by twist being about 25 per cent., each of the single yarns composing the rope must have a length of 125 yards, or the total length of the 120 strands will be 15,000 yards. Since this length weighs 84 lbs. or 1344 ozs., 100 yards weighs nearly 9 ozs. Similarly, No. 20 rope yarn equals 18 ozs. per 100 yards, No. 30 weighs 12 ozs., and No. 18, 20 ozs., etc. * * * The number of flax and hemp yarns under the English system of numbering, indicates the number of cuts or leas, of 300 yards each, contained in one pound weight. Consequently to reduce Scotch to English numbers, it is sufficient to divide 48, or the number of cuts per Scotch spyndle, by the number or weight in lbs. per spyndle. Thus, 3 lbs. Scotch yarn $= \dfrac{48}{3} = 16$'s lea English.

"The average twist required per inch by flax, hemp, and jute yarns may be taken to be the product of 2 and the square root of the number of leas of 300 yards contained in one pound. Thus the number of turns per inch twist necessary for 16's lea equals $2 \times \sqrt{16} = 2 \times 4 = 8$ turns. 16's lea English equals $\dfrac{48}{16} = 3$ lbs. Scotch yarn, so that to find the twist for any given weight of Scotch yarn we may take as a basis the

turns per inch required by 3 lbs. yarn. The number of turns per inch required by any other Scotch number is then obtained by multiplying the turns per inch for 3 lbs. yarn by the square root of 3 and dividing by the square root of the number of the yarn to be twisted. Thus the twist required for yarn. 5 lbs. per spyndle at the rate of 8 turns per inch for 3 lbs. yarn is $\dfrac{8 \times \sqrt{3}}{\sqrt{5}} = \sqrt{\dfrac{64 \times 3}{5}} = 6.2$ turns per inch.

"The reason that the square root of the number is introduced into the twist calculations is that the twist should vary inversely as the diameter of the thread, and that the diameter of the thread varies as the square root of the lbs. per spyndle, or inversely as the square root of the number of leas per lb.

"Thus, to give No. 40 rope yarn, for instance, its standard twist, or $\sqrt{40} \times 3.75 = 6.32 \times 3.75 = 23.6$ turns per foot, upon a gill spinning frame of the roving frame type, having a wheel of 102 teeth upon the delivery roller and driving the twist change pinion through intermediates, the number of teeth in the twist change pinion will be found to be 25, if the remainder of the gearing be as follows:—Stud carrier 64 teeth, spindle shaft wheel 44 teeth, spindle shaft bevels 28 teeth, and spindle pinions 19 teeth. For, the circumference of the boss roller being 4.4 inches, the spindles must make $\dfrac{23.6 \times 4.4}{12} = 8.65$ turns for one ·of the delivery roller, to accomplish which the twist change wheel must have $\dfrac{102 \times 64 \times 28}{8.65 \times 44 \times 19} = 25$ teeth."

All of the claims in appellant's application were rejected by the Primary Examiner on the ground that the structure defined therein involved nothing more than "laboratory skill in the design of the rope," the examiner stating in his decision that invention was not involved in using the "tables or other means of calculation" disclosed in the article by Carter "to predetermine the amount of fibre to produce a rope of a certain size having a certain twist."

With reference to the patent to Metcalf, the Primary Examiner said: " * * In this rope the yarns C and the strands B have approximately the same angle of lay. Even the yarns D, E, have approximately this same angle. Measurements indicate that this angle is approximately 38°. Set-

ting these angles at any other value is a matter of choice and is believed to be within the skill of the rope designer; and may be varied according to the use to which the rope is to be put."

On appeal, the Board of Appeals allowed claims 6, 12, 14, 18, and 19.

Of the claims allowed by the board, claim 12 is sufficiently illustrative. It reads: "12. A hemp center for wire ropes and the like comprising a rope composed of hard fibers, yarns and strands, the number of yarns in each strand being equal to twenty times the diameter of said rope expressed in inches, said rope weighing in pounds per foot extracted weight not less than .287 times the square of said diameter, nor more than .357 times the square of said diameter lubricated weight, and the angle of lay of said strands approximating 29.6°."

We quote from the board's decision:

"The situation presented appears to be that the more detailed features are not shown to be anticipated in the prior art. The examiner takes the view that all of these characteristics are no more than laboratory skill in the design of a rope, that is, the rejection is based upon the patent to Metcalf illustrating a rope of somewhat similar general design in view of textbooks such as that of Carter disclosing examples of what is common knowledge in the textile and cordage arts and such features of degree of twist and number of strands are a matter of choice, degree and design. * * *

"After careful consideration, it is our view that certain of the claims set forth combinations of several of the critical features described as essential in producing the combined result. We also find these features to be more than conventional and that they produce some new and unobvious results. The combination where sufficiently defined is regarded as constituting patentable novelty. The combination of these critical features is considered to be more than mere skill of a rope maker and to be more than a mere choice in matters of degree. Claims 6, 12, 14, 18 and 19 are regarded as setting forth such features as to fairly accomplish the new and unobvious combined result. The above claims are not believed to come within the rule that the mere determination of size or strengths of parts of structures by engineering calculation is not ordinarily invention or the rule that mere expected advance in an art is not invention.

"The remaining claims setting forth mainly only separate or individual features are not believed to fairly define the combination and as standing alone not necessarily productive of the asserted advantageous results."

It appears from appellant's application that the function of a hemp rope center of a wire rope is to provide an elastic support for the wire rope strands, and to hold the wire rope strands "concentrically about the rope's axis and in their proper relative positions, whereby each strand carries only the share of the load for which it is designed."

It is contended by counsel for appellant that wire rope with a hemp rope center, made in accordance with the prior art, frequently failed under working conditions, and, therefore, was unsatisfactory; that, prior to appellant's invention, efforts were made to improve wire rope by improving the steel wire; that appellant discovered that the solution to the problem of improving wire rope was not in improving the steel wire, but rather in improving the hemp rope centers; and that, after more than ten years of research and development, appellant solved the problem by making the hemp rope centers in accordance with the disclosure in his application.

Counsel for appellant states in his brief that appellant's invention differs from the prior art in that "for a given diameter" there are certain fixed factors; namely, the angles of the lay—the degree of twist—of the rope and its strands, the number of twists of fiber per foot of yarn, the number of yarns used to make up each strand, and the "weight in pounds per foot per diameter."

The Board of Appeals evidently was of opinion that claims in which a combination of "critical features" was set forth involved invention, but that claims, such as those here involved, which call for only one of the alleged "critical features" do not define appellant's real invention, and that the structure defined in the claims here involved is not necessarily productive of the advantages claimed for appellant's invention.

Counsel for appellant contends here that, although the rope centers defined in claims 4, 8, and 13 do not possess the combined "critical features," held by the Board

of Appeals to involve invention, each claim defines a rope superior "to the hemp rope that is conventionally supplied wire rope manufacturers for use as rope centers."

Relative to appealed claim 4, which defines a hemp center for wire ropes in which the angles of lay of the rope and strands both approximate 29.6°, counsel for appellant states in his brief that the "laying of the wire rope strands over" such "a hemp center * * * results in an interlocking action between the various yarns of the various strands of the hemp center, which firmly fixes the strands of the center in position relative each other. When flexing of the wire rope strands occurs, the hemp strands of such a center cannot move relative one another when oppositely stressed by such flexing, the center maintaining its form and continuing to properly support the wire rope strands," whereas, in a hemp rope used for general purposes "the strands should slip relative one another to permit load equalization between them," and that the interlocking feature in hemp rope centers made in accordance with that claim is not present in rope centers made in accordance with the prior art.

Relative to claims 8 and 13, counsel for appellant contends that a hemp rope center made in accordance with those claims is a better product than that used in the industry prior to appellant's invention.

In appellant's application it is stated that the invention is not a radical departure from the general practices followed in the prior art in fabricating rope; that appellant's rope centers consist of a plurality of strands; that each strand is composed of several yarns; and that the direction of lay in yarn, strands, and rope is the same as in the prior art. It is further stated therein that "The differences which distinguish the present invention over conventional practices are: the number of yarns in each strand, and, particularly, the length of lay of the strands and rope; the relationship existing between the various lays for the various sizes, and the weight of fiber used."

We find nothing of record to challenge the statement contained in the decision of the Primary Examiner that the "factors" in claims 4, 8, and 13, that is, making the angles of lay—the degree of twist—in the rope and strands equal and of a degree of approximately 29.6° (as stated in claim 4), and providing the number of yarns in each strand in accordance with the diameter of the rope (as stated in claims 8 and 13) amount to nothing more than "laboratory skill in the design of a rope." Furthermore, the examiner's view is sustained, we think, by the disclosures in the references cited. Accordingly, we are unable to hold that the Board of Appeals erred in rejecting claims 4, 8, and 13.

The appeal as to claims 1, 2, 3, 5, 7, 9, 10, 11, 15, 16, 17, and 20 is dismissed.

As to claims 4, 8, and 13, the decision of the Board of Appeals, holding them to be unpatentable over the prior art, is affirmed.

Affirmed.